**In the Matter of Charles C. WALL, III, d/b/a Wall's Sports, Wall Enterprises, Inc., Debtor.**

**William M. FLATAU, Trustee, Plaintiff,**

**v.**

**ASICS TIGER CORPORATION, Defendant.**

**Bankruptcy No. 97–51868.**

**Adversary No. 97–5056.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Jan. 16, 1998.

William M. Flatau, Katz, Flatau, Popson & Boyer, L.L.P., Macon, GA, for Plaintiff.

Jay E. Loeb, Gershon, Olim, Katz & Loeb, L.L.P., Atlanta, GA, for Defendant.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Motion for Summary Judgment by William M. Flatau, Trustee ("Plaintiff"). The Complaint in this adversary proceeding was filed in order to avoid an alleged preferential transfer. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(F). After considering the pleadings, evidence presented and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

On January 21, 1997, Asics Tiger Corporation ("Defendant") obtained a judgment in the total amount of $10,960.71 against Charles C. Wall, III ("Debtor") and others in the State Court of Bibb County, Georgia. The judgment resulted from a suit for the recovery of an antecedent debt owed by Debtor and others to Defendant. A Writ of Fieri Facias was issued by the State Court of Bibb County, Georgia and was filed and recorded in General Execution Docket book 101, page 137, Clerk's Office, Bibb Superior Court on March 11, 1997. Defendant's resulting judgment lien attached to certain real estate owned by Debtor and located in Bibb County, Georgia. Debtor filed for Chapter 7 relief on April 29, 1997.

Plaintiff filed this adversary proceeding seeking to avoid the judgment lien as a preferential transfer. On July 8, 1997, Plaintiff filed a Motion For Summary Judgment stating that there are no genuine issues of material fact and that he was entitled to judgment as a matter of law. Defendant has stipulated that there are no material facts in controversy and that all elements of a preferential transfer have been satisfied except the requirement that the transfer take place "on or within 90 days before the date of the filing of the petition."

### Conclusions of Law

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c).[1] If there is a genuine issue of fact in dispute, summary judgment must be denied.

Here, there are no material facts at issue. As stipulated to by the parties, the only remaining issue to be determined is the purely legal decision as to whether the "transfer of an interest of the debtor in property ... [occurred] ... on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b)(4)(A).[2] Here, this determination is not dependent upon particular facts, but rather, it requires an interpretation of Georgia property law. Accordingly, sum-

1. Rule 56 is made applicable by Federal Rule of Bankruptcy Procedure 7056.

2. The alternative timing requirement that the transfer be made "between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider" is inapplicable here.

mary judgment is appropriate in this instance.

■ In pertinent part, Bankruptcy Code section 547(e) states the following:

(1) For the purposes of this section—

(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee.

According to this provision, in order to determine when a transfer took place for section 547 purposes, it must be determined when the transferee was perfected against bona fide purchasers.[3] It is necessary to look to applicable state law in order make this determination. *See Grover v. Gulino (In re Gulino),* 779 F.2d 546, 550 (9th Cir.1985).

■ In Georgia, a judgment does not affect or become a lien on real property until it is recorded in the office of the clerk of the superior court in the county in which the real property is located. O.C.G.A. § 9–12–86. "The purpose of this statute is to protect third persons acting in good faith and without notice." *National Bank of Georgia v. Morris–Weathers Co.,* 248 Ga. 798, 800, 286 S.E.2d 17, 18 (1982).[4] It follows that the judgment lien holder is not perfected as against bona fide purchasers until the judgment lien is created by recordation. Thus, under the provisions of Bankruptcy Code

section 547(e), in Georgia, this transfer took place at the time of recording.

Section 547(e)(2) provides a grace period through which a diligent judgment creditor is protected from a preference action when the 90th day falls after the judgment date but before the recordation of the judgment on the General Execution Docket (G.E.D.). That section states the following:

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B);

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

11 U.S.C. § 547(e)(2). Thus, if the judgment creditor records within ten days of the judgment, the Bankruptcy Code provides that the transfer will be deemed to have occurred on the date of the judgment, rather than the date of the recording. Here, Debtor did not record the *fi. fa.* within the ten-day grace period, and, thus, section 547(e)(2) has no bearing on the Court's decision.[5]

---

**3.** This statement of law is derived from a more complex analysis made somewhat awkward by the way the sections are organized in the Code. Step 1—Instead of starting at the beginning of § 547(e) to determine when a transfer takes place, the analysis begins in the middle at § 547(e)(2)(B). The section provides that the effective date of the transfer is the date of perfection, provided perfection occurs more than 10 days after the date of the transfer. Step 2—If the perfection occurs within 10 days of the transfer, the effective date relates back to the date of the transfer. Step 3—The date of perfection as defined by § 547(e)(1) is when the transferee would prevail in a priority battle with a bona fide purchaser. In the present case, since the date of perfection did not occur within the 10–day peri-

od, the transfer took place on the date of perfection. This analysis leads to the legal conclusion stated above that "in order to determine when a transfer took place for section 547 purposes, it must be determined when the transferee was perfected against bona fide purchasers."

**4.** This case actually discussed Code Ann. § 110–515, the predecessor to O.C.G.A. § 9–12–86.

**5.** Section 547(e)(1) relates to the issue of the timing of the transfer for purposes of determining whether there exists an avoidable preference. It does not determine the rights of parties under state law. The section provides some relief from the potentially inequitable situation of favoring one creditor over another where, under applica-

■ Defendant asserted that the date of the "transfer" for section 547 purposes should relate back to the date judgment was rendered. As support for this proposition, Defendant cites the *Morris–Weathers Co.* case which states the following:

> The period between the taking of the judgment and its recording is merely a period of dormancy. When the judgment is recorded as provided for in the code, the dormancy ends and the judgment becomes effective as a lien on real estate. We hold that *for priority purposes*, the judgment then relates back to the date of its rendition and shall be considered of equal date with *other perfected liens arising from judgments on verdicts* rendered at the same term of court. To hold otherwise would reinstitute the race to the courthouse by *competing judgment creditors*. This is the very evil which § 110–505 was intended to avoid.[6]

248 Ga. at 800, 286 S.E.2d at 18 (emphasis added).

Defendant confuses two distinct issues. The rule of priority between competing judi-

cial liens under state law is an entirely different consideration from the rule of perfection under federal law as a measuring point for determination of when a transfer took place for purposes of section 547. As explained in *Morris–Weathers*, Georgia law determines priority between competing judgment liens by looking to the date of the original judgment. The rule prevents disparate treatment between litigants whose cases are tried during the same term of court. All prevailing parties in such cases will have equal rights with respect to the enforcement of their judgments against the judgment debtor's property, no matter which order the cases might have been heard. *See id.* This rule, however, does not apply in a priority battle with a bona fide purchaser where, instead, the critical date is the date of recording which creates the lien. *See* O.C.G.A. § 9–12–86; *Morris–Weathers*, 248 Ga. at 800, 286 S.E.2d at 18 ("The purpose of this statute is to protect third persons acting in good faith and without notice."). Further, this rule *does not apply in a preference case when the judgment is recorded more than*

ble nonbankruptcy law, the creditors would enjoy the same priority. For example, suppose that Creditor A was awarded a judgment against Debtor on Day 1, Creditor B was awarded a judgment against Debtor on Day 3, Creditor A recorded the judgment on the G.E.D. on Day 3, and Creditor B recorded the judgment on Day 5. Assuming that these judgments were awarded in Georgia state courts during the same term of court, the two creditors would have equal priority under state law in the absence of bankruptcy. *See* O.C.G.A. § 9–12–87. If a bona fide purchaser appeared on Day 4, such purchaser would acquire Debtor's property subject to the lien of Creditor A, but not subject to the lien of Creditor B, thereby elevating Creditor A's priority as compared to Creditor B. *See* O.C.G.A. § 9–12–86. Likewise, if Debtor filed a bankruptcy petition on Day 4, the Debtor's property would be subject to the lien of Creditor A, but not subject to the lien of Creditor B because of the trustee's hypothetical status as a bona fide purchaser (assuming that the property to which the liens attach is real property). *See* 11 U.S.C. § 544(a)(3). A potentially confusing variation in the hypothetical occurs if the 90th day preceding the filing of a bankruptcy petition by Debtor falls on Day 4. Creditor B recorded the judgment on Day 5, the day after the 90th day preceding bankruptcy. Thus, in the absence of the grace period allowed by Bankruptcy Code § 547(e)(2), Creditor B would lose its state law right of priority equal to

that of Creditor A. Since Creditor B recorded the judgment within 10 days of its entry, the trustee cannot avoid it as a preference. If Creditor B had recorded its lien on the 15th day, rather than the 5th day, the result would have been opposite. In that event, Creditor B would have been subject to preference attack when Creditor A, a judgment creditor of equal priority under state law, would have been immune from such attack.

**6.** Section 110–505 was the predecessor to O.C.G.A. § 9–12–87 which states the following:

> (a) All judgments on verdicts rendered at the same term of court shall be considered, held, and taken to be of equal date.
> (b) In the case of all judgments signed on verdicts rendered at the same term of court, no execution shall be entitled to any preference by reason of being first placed in the hands of the levying officer.

The order of recordation does not change this priority rule. In fact, "as between liens of judgments rendered at different terms upon property of the defendant, the senior judgment has priority, though the execution issued upon the younger judgment may have been duly entered on the general execution docket ... and no execution has been issued on the older judgment." *Eads v. Southern Surety Co.*, 178 Ga. 348, 173 S.E. 163 (1934).

ten days following entry of the judgment. *See supra* note 3.[7]

In sum, the transfer defined by section 547(e)(1)(A) does not occur until the lien is recorded on the G.E.D. pursuant to O.C.G.A. § 9–12–86. The judgment was entered on January 21, 1997. The judgment was recorded on the G.E.D. on March 11, 1997. This bankruptcy case was filed on April 29, 1997. Accordingly, since the judgment lien was not recorded on the G.E.D. within ten days of the date the judgment was entered, January 31, 1997, the "transfer" of the real property interest (i.e. the lien on certain real property owned by Debtor in Bibb County) was made on the date of the recording of the judgment on the G.E.D., March 11, 1997, a date occurring within the ninety-day preference period as described in 11 U.S.C. § 547(b)(4)(A). Since the parties stipulated that all other elements of section 547(b) were satisfied, the Court holds that the judicial lien created by the recording of the *fi. fa.* in General Execution Docket book 101, page 137, Clerk's Office, Bibb Superior Court on March 11, 1997 is avoidable as a preference.

---

**7.** On January 13, 1998, the United States Supreme Court announced a decision in the case of *Fidelity Financial Services, Inc. v. Fink, Trustee (In re Beasley),* —— U.S. ——, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998). That case appears to hold that state law relation-back rules are not relevant in determining the date of transfer in a § 547 action. In *Beasley,* the law of the State of Missouri provided that a creditor could file the necessary documents perfecting a lien in a motor vehicle within thirty (30) days of the creation of the lien in order to enjoy "perfected" status on that date. Bankruptcy Code § 547(c)(3)(B) allows 20 days for that purpose. The Court in *Beasley* resolved the conflict between state and federal law by concluding that the lien, for preference purposes, is " 'perfected' only when the secured party has done all acts required to perfect its interest, not at the moment as of which state law may retroactively deem that perfection effective." —— U.S. at ——, 118 S.Ct. at 654–55. *Beasley* could control the outcome of this case since the Defendant contends that a state law "relation-back" rule prevents the application of § 547. This Court's analysis follows a different path concluding that there is no such state law rule and that the provision relied upon by Defendant was one which merely established priorities between competing judgment lien creditors. Since the outcome of this case would be the same either way, the question of which avenue of analysis is preferred is of mere academic interest.