**In re Michael Marlow ANDREWS,**
**Debtor.**

**Michael Marlow Andrews, Movant,**

v.

**Charles William Adcock, Respondent.**

**No. 13–40491.**

United States Bankruptcy Court,
N.D. Georgia,
Rome Division.

Sept. 17, 2013.

Brian R. Cahn, Perrotta Cahn & Prieto, P.C., Cartersville, GA, for Michael Marlow Andrews.

Charles William Adcock, pro se.

## ORDER ON DEBTOR'S MOTION TO AVOID LIEN

PAUL W. BONAPFEL, Bankruptcy Judge.

The legal question here is whether an unrecorded judgment gives rise under Georgia law to an in rem interest in a Chapter 7 debtor's nonexempt real property that survives bankruptcy when the property is abandoned to the debtor under 11 U.S.C. § 554(c) because the Chapter 7 trustee does not administer it.

As the Court later explains in more detail, a judgment under Georgia law becomes effective as a lien on a judgment debtor's property upon its entry. Although recordation of a judgment is essential to enforcement of a lien on real property against a bona fide purchaser, recordation is not a condition to the creation of the creditor's right to a lien that is enforceable against the debtor's interest in the property. Neither the filing of a Chapter 7 bankruptcy case nor a Chapter 7 debtor's discharge eliminates lien rights in a debtor's property in the absence of avoidance of the lien under some provision of the Bankruptcy Code. When, as in this case, a Chapter 7 trustee does not seek to avoid the lien rights arising from an unrecorded judgment and the debtor has no right to do so because they do not impair his exemption in the property, the judgment creditor's lien rights are enforceable against the debtor's nonexempt property upon the closing of the case.

The facts are not in dispute.[1] Charles William Adcock (the "Creditor") obtained a judgment for $2,300 plus costs against Michael Marlow Andrews (the "Debtor") in

---

1. The Court held a hearing in this contested matter on April 24, 2013. The parties agreed for the Court to determine the legal issues on the basis of the record.

the Magistrate Court of Paulding County, Georgia, on February 5, 2013.[2] The Creditor did not obtain a writ of fieri facias and did not record any lien in any county in Georgia[3] by the time the Debtor filed his Chapter 7 case on February 25, 2013.

The Debtor's scheduled assets include real property in Cobb County, Georgia, known as 2912 Noah Drive, Acworth, Georgia (the "Real Property") with a value of $ 124,000 and a debt of $ 100,000 secured by a deed to secure debt.[4] The Debtor claimed an exemption of $ 2,600 in the Real Property,[5] but the exemption is immaterial in view of his equity in the property, $ 24,000, and the fact that the amount of the Creditor's judgment, $ 2,300 and costs, is substantially less than the Debtor's equity in it in excess of the exemption. The Debtor exempted all of his other real and personal property.[6]

The Chapter 7 Trustee filed a Report of No Distribution.[7] In the Report, the Trustee requests that he be discharged and states, "[T]here is no property available for distribution from the estate over and above that exempted by law." The filing of the Report signals that the Trustee will not seek to sell any assets of the estate or otherwise seek to recover any property or money for distribution to creditors.

The Debtor has received a Chapter 7 discharge. [26]. This means that the Creditor cannot enforce its judgment as a personal liability of the Debtor. 11 U.S.C. § 524(a). But the debt itself still exists and is enforceable against property of the Debtor to the extent that the Creditor has a lien on it, unless the Debtor can avoid it

under 11 U.S.C. § 522(f). As applicable here, § 522(f)(1)(A) permits the avoidance of a judicial lien that impairs a debtor's exemption in property.

The Debtor filed a motion to avoid the Creditor's lien in its entirety under § 522(f). [12]. Although the Creditor does not contest the avoidance of the lien under § 522(f) with regard to any of the Debtor's other property, he asserts that the Debtor cannot avoid the lien on the Real Property.

■ The answers to the § 522(f) questions are easy. With regard to all of the Debtor's assets other than the Real Property, the Creditor's lien impairs the Debtor's exemptions and is avoidable. With regard to the Real Property, however, the lien does not impair the Debtor's exemption because, even after the exemption, the Debtor has equity in the Real Property that exceeds the sum of the amounts of debtor's exemption and the lien. Thus, § 522(f) does not permit the Debtor to avoid any lien that the Creditor has on the Real Property.

But the Debtor's request for relief goes beyond avoidance of the lien under § 522(f). As developed at a hearing on April 25, 2013, the Debtor contends that the judgment is not enforceable as a lien against the Real Property because the Creditor did not obtain a writ of fieri facias and record it prior to the filing of the Chapter 7 case. In effect, the Debtor seeks a determination that the Creditor does not have an enforceable lien on the Real Property as a result of the filing of the Chapter 7 case.[8]

---

2. Debtor's Motion to Avoid Lien [12] at ¶ 2.

3. Debtor's Letter Brief [21] at 1–2.

4. Schedules A and D, Docket No. 1, at 7, 14.

5. Schedule E, Docket No. 1, at 15.

6. Schedule E, Docket No. 1, at 15.

7. See Docket Entry, May 15, 2013.

8. The Debtor's request for relief is actually a request for a declaratory judgment. Bankruptcy Rule 7001(9) requires a party to seek a declaratory judgment through the filing of an adversary proceeding. The requirement of an adversary proceeding is not jurisdictional,

■ Importantly, the issue is whether the holder of an unrecorded judgment has rights in a Chapter 7 *debtor's* nonexempt property, not whether a bankruptcy trustee can avoid those rights on behalf of the estate or treatment of the Creditor's claim in a Chapter 13 plan. The failure to record a judgment renders any judgment lien ineffective against a bona fide purchaser. O.C.G.A. § 9–12–86(b). Under 11 U.S.C. § 544(a)(3), a bankruptcy trustee has the rights of a bona fide purchaser of real property, whether or not such a purchaser exists. Thus, the Creditor's lien would be ineffective if the Chapter 7 Trustee sought to avoid it for the benefit of creditors generally, and a Chapter 13 plan likely could treat the Creditor's claim as wholly unsecured for that reason.[9]

■ Under certain circumstances, a Chapter 7 debtor may avoid transfers that a Chapter 7 trustee could avoid but does not. 11 U.S.C. §§ 522(g), (h). But a condition to a debtor's right to use the trustee's avoidance powers is that he exempt the property. Because the Debtor has not exempted (and does not have sufficient exemptions to exempt) enough equity in the Real Property to overcome the Creditor's lien, he cannot invoke these provisions.

Georgia law controls the issue before the Court. Two Georgia statutes are relevant to the analysis of the question.

■ First, O.C.G.A. § 9–12–80 states a general rule:

All judgments obtained in the superior courts, magistrate courts, or other courts of this state shall be of equal dignity and shall bind all the property of the defendant in judgment, both real and personal, from the date of such judgments except as otherwise provided in this Code.

This "effective date" statute makes no reference to the necessity of recordation of a judgment for it to "bind all the property of the defendant." Thus, the general rule in Georgia is that a judgment constitutes a lien on all of the judgment debtor's real and personal property from the date of its rendition.[10]

however. *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). The Creditor's consent to the Court's consideration of the Debtor's request for relief in the context of the Debtor's motion constitutes a waiver of the requirement of an adversary proceeding.

The Debtor's motion does not expressly seek the declaratory relief he now requests, but the Court may determine all issues tried with the express or implied consent of the parties under Fed.R.Civ.P. 15(b)(2), *applicable under* Fed. R. Bankr.P. 7015, which this Court will apply in this proceeding under Fed. R. Bankr.P. 9014(c).

For the foregoing reasons, the Court may determine the Debtor's request for relief in this contested matter.

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). This bankruptcy judge has authority to hear it under 28 U.S.C. § 157(a) by reference from the District Court pursuant to LR 83.7, NDGa. It is a core proceeding under 28 U.S.C.

§ 157(b)(2)(K) and (O). To the extent that any of the issues are not within the definition of a core proceeding, the parties have consented to this court's determination of them and entry of a final order. Accordingly, this Court has authority to determine this matter and enter a final order under 28 U.S.C. § 157(b)(1) or 28 U.S.C. § 157(c)(2).

9. *See generally* W. Homer Drake, Jr., et al., *Chapter 13 Practice and Procedure* § 9C:7. Under the so-called "best interest of creditors" test of 11 U.S.C. § 1325(a)(4), the plan would have to provide for unsecured creditors to receive payments based on the value the estate realizes due to avoidance of the lien. *Id.* § 9E:7.

10. *See In re Tinsley,* 421 F.Supp. 1007, 1008 (M.D.Ga.1976), *aff'd* 554 F.2d 1064 (5th Cir. 1977) (Table) (discussing Georgia case law and stating, "[A] common law judgment is a lien upon rendition of judgment.") (Interpreting former Ga.Code Ann. § 110–507,

The second statute deals with the recordation of judgments. This "recordation statute," O.C.G.A. § 9–12–86(b) provides in pertinent part (emphasis added):

> No judgment ... *shall in any way affect or become a lien* upon the title to real property until the judgment is recorded in the office of the clerk of the superior court of the county in which the real property is located.... and is entered in the indexes to the applicable records in the office of the clerk.

The emphasized language in this recordation statute expressly states that a judgment does not "in any way affect or become a lien" upon title to real property until its proper recordation. This language leads to the conclusion that the Debtor urges: the Creditor does not have a lien on his Real Property because it was not recorded at the time of the bankruptcy filing.

Two cases have dealt with the interplay of these two statutes. When they were decided, the two statutes, O.C.G.A. § 9–12–80 and § 9–12–86, were codified as former Ga.Code Ann. § 110–507 and § 110–515, respectively. The language in the current statutes is the same as the language in the earlier codifications, with immaterial editorial changes.

The first case, *In re Tinsley*, 421 F.Supp. 1007 (M.D.Ga.1976), *aff'd* 554 F.2d 1064 (5th Cir.1977) (Table), arose under the former Bankruptcy Act of 1898, as amended. Section 67a(1) of the Bankruptcy Act then provided that any judgment obtained within four months of a bankruptcy filing was "null and void" if the bankrupt was insolvent at the time.[11]

The judgment creditor in *Tinsley* obtained a judgment but did not immediately record it pending an appeal. After affirmance of the judgment, the creditor recorded its judgment lien. The recordation occurred within four months of the judgment debtor's bankruptcy filing. The issue was whether the creditor obtained its lien upon its rendition (outside the four-month period) or upon its recordation (within the four-month period and when the debtor was insolvent).

The trustee contended that the lien was void under former § 67a(1) because the judgment did not become effective until its recordation under the recordation statute (now O.C.G.A. § 9–12–86(b), formerly codified as Ga.Code Ann. § 110–515). The creditor relied on the effective date statute (now O.C.G.A. § 9–12–80, formerly codified as Ga.Code Ann. § 110–507) for the proposition that the lien became effective upon rendition of the judgment. It is important to an understanding of the issue to note that the recordation statute (O.C.G.A. § 9–12–86(b)), was enacted after the effective date statute (O.C.G.A. § 9–12–80).[12]

The *Tinsley* court ruled that the recordation statute (now O.C.G.A. § 9–12–86(b)), as the later-enacted statute, had "conclusively interred" the principle that, with regard to real property, a judgment becomes a lien upon its rendition. *Tinsley*, 421 F.Supp. at 1010. The court reasoned that the two statutes were inconsistent and that "the newer statute [now O.C.G.A. § 9–12–86(b) ], with its express provision that conflicting laws be repealed, must prevail." *Id.* at 1011.

---

which was later recodified as O.C.G.A. § 9–12–80 with immaterial editorial changes).

11. Former Bankruptcy Act § 67a(1).

12. *In re Tinsley*, 421 F.Supp. 1007, 1008 (M.D.Ga.1976), *aff'd* 554 F.2d 1064 (5th Cir. 1977) (Table); *National Bank of Georgia v. Morris–Weathers Co.*, 248 Ga. 798, 286 S.E.2d 17 (1982).

The holding of the *Tinsley* court is that the more recent recordation statute (now O.C.G.A. § 9–12–86(b)), controls over the older effective date statute (now O.C.G.A. § 9–12–80). The recordation statute expressly provides that an unrecorded judgment does not affect or become a lien upon any real property until its recordation. Under the *Tinsley* analysis, the Creditor did not have a lien on the Debtor's Real Property when he filed his Chapter 7 case because his unrecorded judgment was ineffective.[13]

A few years after *Tinsley,* the Supreme Court of Georgia decided the second case dealing with the interplay of the two statutes, *National Bank of Georgia v. Morris–Weathers Co.,* 248 Ga. 798, 286 S.E.2d 17 (1982). In *Morris–Weathers,* three creditors had obtained judgments against the debtor in the same court during the same term. One creditor recorded its judgment before the other two. A foreclosure sale resulted in a surplus, and the foreclosing lender filed an interpleader action so that the superior court could determine allocation of the surplus among the three creditors. The issues were the priorities of the three judgment and allocation of the surplus among them.

The creditor who recorded first, in accordance with the *Tinsley* analysis, argued that the recordation statute, O.C.G.A. § 9–12–86(b) (then codified as Ga.Code Ann. § 110–515) controlled the issue. Under *Tinsley,* the other creditors did not obtain a lien under the recordation statute (O.C.G.A. § 9–12–86(b)) until they recorded their judgments. Because their recordations occurred later, the first-recorded creditor concluded, the other creditors could not receive any of the surplus until its prior lien was paid in full.

The creditors with the later-recorded judgments asserted that, because all three of the judgments were rendered at the same term of court, the judgments had equal dignity under the effective date statute quoted earlier, O.C.G.A. § 9–12–80 (then codified as Ga.Code Ann. § 110–507), and another statute, O.C.G.A. § 9–12–87 (then codified as Ga.Code. Ann. § 110–505).[14] The effective date statute (O.C.G.A. § 9–12–80), in addition to stating that a judgment binds property of the judgment debtor from the date of its rendition, provides that all judgments are of equal dignity, except as the Georgia Code otherwise provides. The other statute (O.C.G.A. § 9–12–87) provides that all judgments rendered during the same term of court are considered to be of equal date. Based on the equality of the three judgments under these statutes, the creditors with the later-recorded judgments sought a pro rata allocation of the surplus among all of the judgments.

The Georgia Supreme Court in *Morris–Weathers* rejected the *Tinsley* court's conclusion that the recordation statute, O.C.G.A. § 9–12–86(b), had repealed the earlier statutes with regard to the effect of recordation. 248 Ga. at 799, 286 S.E.2d at 18. The court reasoned that the purpose

13. *National Service Direct, Inc. v. Anderson (In re National Service Direct, Inc.),* 2005 WL 3465716 (Bankr.N.D.Ga.2005), cites *Tinsley* with approval for the proposition that a judgment attaches to real property only upon recordation of the judgment lien. The court stated, "[T]he judgment must be recorded in the General Execution Docket in the county where the real property is located to attach to any real property of the debtor." *Id.* at *3.

*National Service Direct* does not deal with a lien on real property and did not address the Georgia Supreme Court's decision in *National Bank of Georgia v. Morris–Weathers Co.,* 248 Ga. 798, 286 S.E.2d 17 (1982), discussed later in the text.

14. The language of the statutes in the two codifications is the same, with immaterial editorial changes.

of the recordation statute "is to protect third persons acting in good faith and without notice by requiring that any judgment, decree or order must be recorded before it will in any way affect or become a lien on title to real property." *Id.* Given this purpose, the court found no conflict between the recordation statute and the equal dignity and equal date statutes and ruled that the recordation statute did not repeal the earlier statutes. *Id.*

The *Morris–Weathers* court explained, "Although § 110–515 [the recordation statute, now codified as O.C.G.A. § 9–12–86(b) ] causes a judgment to have no effect as a lien on real estate during the period in which it is not recorded, it does not mean that the judgment does not exist. The period between the taking of the judgment and its recording is merely a period of dormancy. When the judgment is recorded as provided for in the Code, the dormancy ends and the judgment becomes effective as a lien on real estate." 248 Ga. at 799, 286 S.E.2d at 18.

Georgia law applies to the determination of the rights of the Creditor in the Real Property at the time the Debtor filed his bankruptcy case. The ruling of the Supreme Court of Georgia in *Morris–Weathers* and its express rejection of the *Tinsley* analysis must control the outcome here.

■ The holding of *Morris–Weathers* is that recordation of a judgment lien is immaterial for the determination of priorities among competing judgment liens. The reason is that the recordation statute (O.C.G.A. § 9–12–86(b)) protects only third persons acting in good faith and without notice. 248 Ga. at 799, 286 S.E.2d at 18. Because a judgment debtor is not a third person that the recordation statute protects, recordation must also be immaterial with regard to the effectiveness of a judgment as between the judgment creditor and the judgment debtor.

Under *Morris–Weathers,* an unrecorded judgment is valid and enforceable between the judgment creditor and the judgment debtor under the effective date statute, O.C.G.A. § 9–12–80. Recordation of the judgment on the general execution docket is the means of perfecting the lien of the judgment against real property, but the lack of recordation "does not mean that the judgment does not exist." *Watkins v. Citizens and Southern National Bank,* 163 Ga.App. 468, 294 S.E.2d 703, 704 (1982) (quoting *National Bank of Georgia v. Morris–Weathers Co.,* 248 Ga. 798, 800, 286 S.E.2d 17 (1982)). Thus, a lien *exists* prior to recordation, but it is not *perfected* until recorded on the general execution docket. Simply put, the absence of recordation does not eliminate the existence or effect of an unrecorded judgment against the interest of a judgment debtor, as opposed to the interests of third parties, in the property.

■ One of the fundamental principles of bankruptcy is that a lien, as an in rem interest in a debtor's property, passes through bankruptcy unaffected unless something happens to it during the case. *E.g., Long v. Bullard,* 117 U.S. 617, 620–21, 6 S.Ct. 917, 29 L.Ed. 1004(1886); *Universal American Mortgage Co. v. Bateman (In re Bateman),* 331 F.3d 821, 827 (11th Cir.2003). Something *could* have happened to the Creditor's lien here—the Chapter 7 trustee could have sold the Real Property, exercised the rights of a bona fide purchaser to avoid the Creditor's unrecorded judgment under 11 U.S.C. § 544(a)(3), and made a distribution to unsecured creditors of any net proceeds from the sale after satisfaction of the debt secured by the security deed, payment of expenses of sale, and payment of expenses of administering the case. But none of

that occurred.[15]

■ The Court concludes that the Creditor's unrecorded judgment gives him an in rem right that binds and attaches to the Debtor's property under Georgia law. This property interest is the right to record and perfect the lien of the judgment. It passes through and survives bankruptcy. *Accord, In re Robinson,* 2007 WL 1848016, *3 (Bankr.N.D.W.Va.2007) (Construing comparable West Virginia law, the court concluded, "[U]nder West Virginia law, a judgment creditor is afforded an in rem property right with the entry of the judgment and no further step is necessary to transform what was formerly only a debtor's personal liability into that in rem right.... Whether or not a judgment creditor has perfected his or her interest as against third parties bears no relation to whether or not the security interest of the judgment creditor has attached to the debtor's property.").

So with respect to rights in the Real Property, all of the parties, including the Debtor and the Creditor, have precisely what they had prior to the commencement of the case. The Creditor's rights include dormant lien rights that can become effective upon recordation of the judgment. Because the Creditor's lien rights do not impair the Debtor's limited exemption in the Real Property, the Debtor cannot avoid them under 11 U.S.C. § 522(f).

The Court will enter judgment avoiding the lien of the Creditor with regard to all of the Debtor's property except the Real Property, denying the Debtor's motion to avoid the lien with regard to the Real Property, and determining that the Creditor has lien rights that are enforceable against the Real Property. Of course, the Creditor cannot enforce the judgment lien against any property of the Debtor other than the Real Property and cannot enforce the judgment as an in personam obligation of the Debtor. 11 U.S.C. § 524(a).

---

15. The Court does not suggest that the Chapter 7 Trustee should have administered the Real Property. The facts as presented indicate $24,000 of equity in the Real Property, but, based on the facts "on the ground," the Trustee may well have concluded that the estate eventually would not realize much, if any, from a trustee's sale. For example, a Chapter 7 trustee must consider how long it will take to market and sell the property (during which time the secured debt will increase and thus decrease the realizable equity), the expenses of selling it (primarily a real estate sales commission), and the costs of administering the case. In addition to the fees and expenses of the Trustee, administrative expenses could include attorney's fees for legal services in connection with filing appropriate pleadings to effect a sale of the property and the avoidance of the Creditor's lien and accountant's fees for filing a tax return for the estate. Taking all of these factors into account, the result of an effort to sell the property could easily be little or nothing for unsecured creditors. A Chapter 7 trustee may appropriately decline to administer property in such circumstances.